1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11

| | |
|---|---|
| STRATEGIC FUNDING SOURCE, INC. d/b/a KAPITUS, a New York Corporation, | CASE NO. 3:25-cv-05220-TL |
| Petitioner, | |
| v. | ORDER ON MOTION FOR DEFAULT JUDGMENT |
| RON BOONKUR (a/k/a RONNAYUTH BOONKUE), an individual; and BOON BOON LLC, a Washington limited liability company, | |
| Defendants. | |

        This matter is before the Court on Plaintiff's Motion for Default Judgment. Dkt. No. 13.

Defendants have not appeared or otherwise participated in this case. On June 18, 2025, the Clerk

of Court entered Defendants into default. Dkt. No. 11. Having reviewed Plaintiff's motion and

the relevant record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

//

//

# I.    BACKGROUND

This is a breach-of-contract and unjust-enrichment case that arises out of Plaintiff Strategic Funding's ("Plaintiff") provision of financing to Defendant Ron Boonkur ("Boonkur") (Dkt. No. 1 (Complaint) ¶¶ 9, 12)), followed by Defendant's subsequent failure to fulfill his contractual obligations. *Id*. ¶ 19. Plaintiff is a New York corporation that provides financing to small businesses. *Id*. ¶ 7. One of Plaintiff's services is merchant cash financing ("MCA"). *Id*. Merchant cash financing is a service by which a borrower sells and assigns a specified percentage of its future credit-card receivables to a customer in exchange for an up-front cash purchase price, which is provided by the customer. *Id*. Plaintiff's principal place of business is New York, New York. *Id*. ¶ 1. Defendant Boonkur is an individual who resides in Thurston County, Washington. *Id*. ¶ 2. Defendant Boon Boon, LLC ("Boon Boon") is a Washington limited liability company with its principal place of business in Thurston County, Washington. *Id*. ¶ 3.

On September 10, 2014, Boonkur contacted Plaintiff seeking MCA financing. *Id*. ¶ 7. Boonkur sought this financing on behalf of Jag & Nasha, LLC ("Jag & Nasha") d/b/a Pattaya Thai Restaurant ("Pattaya Thai"). *Id*. ¶ 8. Pattaya Thai is a restaurant that Boonkur opened in Lacey, Washington, which is in Thurston County. *Id*. On September 12, 2014, Plaintiff and Boonkur entered into a merchant cash advance agreement ("First Agreement"). *Id*. ¶ 9. In exchange for an upfront payment of $50,000 from Plaintiff, Plaintiff bought $70,450 of Pattaya Thai's future credit-card receivables generated through its business. *Id*. As part of the First Agreement, Boonkur personally guaranteed the performance and obligations of Pattaya Thai through a Security Agreement and Guaranty ("First Guaranty"). *Id*. ¶ 10. This guaranty was

//

//

1    signed in Boonkur's daughter's name.[1] *Id.* ¶ 32. However, Plaintiff later learned that Boonkur

2    had forged his daughter's signature.[2] *Id.* ¶ 32.

3            On February 5, 2015, the Parties entered into another merchant cash advance agreement

4    ("Second Agreement"). *Id.* ¶ 12. In this agreement, Plaintiff purchased $94,403 of Pattaya Thai's

5    future credit-card receivables in exchange for an upfront payment of $67,000. *Id.* Boonkur

6    guaranteed the performance and obligations of Pattaya Thai through another Security Agreement

7    and Guaranty ("Second Guaranty"). *Id.* ¶ 13. The Second Guaranty was also purported to have

8    been signed by Boonkur's daughter but, as with the First Guaranty, the signature had been forged

9    by Boonkur. *Id.* ¶ 32.

10           The Second Agreement includes several agreements, for which Plaintiff claims

11   Defendant Boonkur has broken. *Id.* ¶¶ 15–17. First, it includes an agreement that Pattaya Thai

12   would not, without prior written notice to Plaintiff, "change the card processor through which the

13   Receipts are settled from Processor to another card processor" or "conduct its business under any

14   name other than as disclosed to Processor and [Plaintiff]." Dkt. No. 1-1 at 7 (Merchant Cash

15   Advance Agreement). Second, Boonkur agreed to be liable for all costs and expenses, including

16   attorney fees, attendant to the enforcement of the Second Agreement. *Id.* Lastly, Boonkur also

17   agreed to pay $7,500 in "Default" and "Processor Change" fees if Pattaya Thai made an

18   unauthorized change of its credit-card processor. *Id.*

19           Plaintiff alleges that Defendant Boonkur has not fulfilled his contractual obligations

20   under the Second Agreement. Dkt. No. 1 ¶ 19. For example, in September 2015, Defendant

---

[1] Boonkur's daughter, Christina Boonkur, was listed as a signatory on the agreements at issue in this case. Dkt. No.1-1 at 2 and 8. However, she is listed as Christina Boonkue in the complaint and on a judgment Plaintiff secured in a New York Court. Dkt. No 1 at 3; Dkt. No. 1-2 at 5. Therefore, the Court will refer to her as Christina Boonkue in this Order.

[2] Ms. Boonkue later provided a New York court with affidavits proving her father forged her signature, and a judgment against her was vacated. *Id.* ¶¶ 31 and 32.

Boonkur created a new entity titled Boon Boon LLC ("Boon Boon"). *Id*. ¶ 20. After forming this entity, Defendant Boonkur allegedly transferred assets and business, including credit-card processing, of Jag & Nasha, to Defendant Boon Boon. *Id*. Plaintiff alleges that Defendant Boon Boon is essentially a continuation of Jag & Nasha because it: (1) registered under the same business address (*id*. ¶ 22); and (2) took over the commercial lease previously held by Jag & Nasha, LLC (*id*. ¶ 23). Defendant Boonkur is the governor of Defendant Boon Boon, and Defendant Boon Boon continues to operate Pattaya Thai. *Id*. ¶¶ 24, 26. Plaintiff asserts that Defendant Boonkur's creation of Defendant Boon Boon and subsequent transfer of assets from Jag & Nasha to Defendant Boon Boon was an effort to hinder, delay, and defraud Plaintiff to avoid contractual obligations. *Id*. ¶¶ 27–28.

On March 22, 2016, Plaintiff brought a lawsuit against Jag & Nasha, Boonkur, and Christina Boonkue in the Supreme Court of the State of New York, alleging breach of the Second Agreement *Id*. ¶ 29. The New York court entered a $64,339.61 money judgment against Boonkur, Christina Boonkue, and Jag & Nasha. *Id*. ¶ 30. After providing affidavits to the New York court showing that Boonkur had forged her signature, the judgment against Christina Boonkue was vacated. *Id.* ¶¶ 31 and 32. Neither Jag & Nasha nor Boonkur has satisfied the New York judgment. *Id*. ¶ 33

On February 26, 2025, Plaintiff filed a petition to domesticate the New York judgment in Thurston County Superior Court in Washington. *Id*. ¶ 36. Plaintiff asserts the New York judgment is binding in Washington pursuant to the Washington Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Chapter 6.36 RCW. *Id*. ¶ 37. Plaintiff has brought the present action seeking a judgment against Defendant Boonkur and Defendant Boon Boon for: "(1) the full amount owing on the New York Judgment, including interest; and (2) the attorney's fees and costs it has incurred to date in attempting to enforce the New York judgment." *Id*. ¶ 38. In total,

1   Plaintiff asserts that Defendant Boonkur owes $224,335.12, stemming from the New York

2   judgment, to include the principal judgment and interest (Dkt. No. 13 at 3), as well as

3   Washington attorney fees and costs incurred while pursuing collection (Dkt. No. 13 at 4).

4          On March 13, 2025, Plaintiff filed the instant civil action against Defendants, alleging

5   breach of contract and unjust enrichment. Dkt. No. 1. On May 14, 2025, Plaintiff served process

6   on Defendant Boonkur and Defendant Boon Boon. Dkt. No. 1-8 (Summons Boonkur); Dkt.

7   No. 1-9 (Summons Boon Boon). Neither Defendant has appeared in this case, and neither has

8   answered or otherwise responded to Plaintiff's complaint. Neither Defendant has participated in

9   this case in any fashion. On June 18, 2025, the Clerk of Court entered both Defendants into

10  default (Dkt. No. 11), and Plaintiff was given 90 days—until September 16, 2025—to move for

11  default judgment (Dkt. No. 12 (Minute Order)). On August 27, 2025, Plaintiff filed the instant

12  motion for default judgment. Dkt. No. 13.

13                              **II.    LEGAL STANDARD**

14         A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

15  F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

16  prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

17  1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

18  considering whether to exercise discretion in entering default judgments, courts consider a

19  variety of factors (the "*Eitel* factors"), including:

20              (1) the possibility of prejudice to the plaintiff; (2) the merits of
                plaintiff's substantive claim; (3) the sufficiency of the complaint;
21              (4) the sum of money at stake in the action; (5) the possibility of a
                dispute concerning material facts; (6) whether the default was due
22              to excusable neglect; and (7) the strong policy underlying the
                Federal Rules of Civil Procedure favoring decisions on the merits.
23

24

*Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021); *e.g.*, *Bd. of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*, No. C08-2619, 2009 WL 1033665, at *4–5 (N.D. Cal. Apr. 13, 2009) (finding second and third *Eitel* factors dispositive when deciding to enter default judgment).

Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except for those regarding facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*, 980 F.2d at 1267). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### III.    DISCUSSION

**A.    Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.    Subject-Matter Jurisdiction

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is incorporated in New York and maintains its principal place of business in New York. Dkt. No. 1 ¶ 1. Defendant Boonkur is a citizen of Washington and resides in Thurston County, Washington. *Id.* ¶ 2. Defendant Boon Boon is incorporated in Washington and maintains its principal place of business in Thurston County, Washington. *Id.* ¶ 3. Thus, there is diversity of citizenship between

the Parties. *See* 28 U.S.C. § 1332(c)(1). Further, the amount of money in controversy exceeds $75,000. Dkt. No. 1 ¶¶ 34–35; *see also* Dkt. No. 13 at 4 (demanding $224,335.12 in damages).

### 2.  Personal Jurisdiction

The Court may properly exercise general personal jurisdiction over Defendants Boonkur and Boon Boon because they are both residents of Washington. Dkt. No. 1 ¶ 2; Dkt. No. 1 ¶ 3. Defendant Boonkur's place of residence is Thurston County, Washington, and Defendant Boon Boon is a Washington LLC that maintains the establishment Pattaya Thai in Lacey, Washington. Dkt. No. 1 ¶ 2; Dkt. No. 1 ¶ 3. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Defendant Boon Boon's incorporation as a Washington LLC, along with its operation of a restaurant, Pattaya Thai, in Washington, clearly establishes this Court's general personal jurisdiction over it. *See Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 330–31, 803 P.2d 329 (1991).

### B.  Default Judgment

Considering the *Eitel* factors, the Court finds that entry of default judgment is warranted.

### 1.  Factor One: Prejudice to Plaintiff

"The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered." *GS Holistic, LLC v. City Smoke Corp.*, No. C24-1286, 2025 WL 1345083, at *2 (W.D. Wash. May 8, 2025). Without entry of default judgment, Plaintiff will be prejudiced. Plaintiff has attempted to litigate this case, both here and in New York, and recoup money it asserts it is owed. However, Defendants have failed to appear or participate in this litigation, despite having been properly served. "Without default judgment, Plaintiff will suffer prejudice because [it] will 'be denied the right to judicial resolution' of [its] claim and will be

'without other recourse for recovery.'" *Id.* (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)).

Therefore, the first *Eitel* factor weighs in favor of entering default judgment.

### 2. Factors Two and Three: Merits of Plaintiff's Claim and Sufficiency of Complaint

The second and third *Eitel* factors examine "the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint." *Id.* In the Ninth Circuit, these factors are frequently analyzed together. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that the second and third *Eitel* factors require a plaintiff to state a claim on which they can recover). These factors weigh in favor of an entry of default judgment if the allegations in a complaint sufficiently state a claim upon which relief can be granted. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Courts apply the *Iqbal-Twombly* standard, where a complaint is sufficient if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, taking the allegations in Plaintiff's complaint as true, Plaintiff alleges a potentially successful claim of breach of contract against Defendants, but not unjust enrichment.

### a. Breach of Contract

"To prevail on a breach-of-contract claim under Washington law, the plaintiff must show that: (1) the contract imposes a duty; (2) the duty was breached; and (3) the breach proximately causes damage to the claimant." *Haywood v. Amazon, Inc.*, No. C22-1094, 2023 WL 4585362, at *3 (W.D. Wash. July 18, 2023) (citing *Nw. Indep. Mfrs. v. Dept. of Lab and Indus.*, 78 Wash. App. 707, 712, 899 P.2d 6 (1995)). In this case, the duty prescribed by the Second Agreement was that, in exchange for an upfront payment of $67,000 from Plaintiff, Defendant Boonkur

1    would transfer $94,403 worth of credit-card receivables to Plaintiff. Dkt. No. 1 ¶ 12. Defendant

2    Boonkur, on behalf of Jag & Nasha doing business as Pattaya Thai Cuisine (now Defendant

3    Boon Boon), executed a Security Agreement and Guaranty, wherein Defendant Boonkur

4    guaranteed the performance and obligations of Defendant Boonkur's restaurant, Pattaya Thai. *Id*.

5    ¶ 13; Dkt. No. 1-1 at 2. Defendants breached their duties in both the Second Agreement and

6    Second Guaranty, because neither Defendant provided Plaintiff with any credit-card receivables

7    for the Second Agreement. *Id*. ¶ 19. Defendants' breach was a proximate cause of damage to

8    Plaintiff, because Plaintiff paid Defendants $67,000 expecting a return of credit-card receivables

9    but never received anything.

### b.  Unjust Enrichment

10

11          In Washington, unjust enrichment "occurs when one retains money or benefits which in

12   justice and equity belong to another." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn.

13   App. 151, 160, 810 P.2d 12 (1991). This cause of action "is the method of recovery for the value

14   of the benefit retained *absent any contractual relationship* because notions of fairness and justice

15   require it." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (citing *Bailie*

16   *Commc'ns*, 61 Wn. App. at 160) (emphasis added). "[A]s a quasi-contractual remedy, unjust

17   enrichment does not apply where there is a valid express contract between the same parties

18   covering the same subject matter." *Taie v. Ten Bridges LLC*, 568 F. Supp. Ed 1126, 1133 (W.D.

19   Wash. 2021). An unjust enrichment claim cannot succeed when the plaintiff and defendant have

20   an existing contract that covers the same subject matter that the plaintiff alleges in the unjust

21   enrichment claim. *Surface Art, Inc. v. Tessarae Technologies, LLC*, No. 2:24-cv-00924-TL, 2025

22   WL 1267433, at *14 (W.D. Wash. May 1, 2025) (court found no legal theory for which unjust

23   enrichment could succeed when based on same subject matter as parties' contract).

24

In the present case, Plaintiff alleges breach of contract and unjust enrichment and cites to the Second Agreement and Second Guaranty as support for both claims. Dkt. No. 13 at 5–6. Therefore, Plaintiff's unjust enrichment claim fails because: (1) Plaintiff and Defendants had a valid contract (Second Agreement and Second Guaranty); and (2) the basis for the unjust enrichment claim covers the same subject matter in the contracts from which Plaintiff alleges Defendants' unjust enrichment stems.

Although Plaintiff fails on its unjust enrichment claim, it succeeds on its breach of contract claim.

Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3.  Factor Four: Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[W]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019 WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*, Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)); *see also Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech. Inc.*, No. C10-2212, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (finding sum of money for unpaid contributions, liquidated damages, and attorney fees to be appropriate award under *Eitel* analysis, where Plaintiff had provided adequate evidence in support of damages). Relevant to the amount requested here, when sufficient evidence is presented to support a sum of money requested in a breach of contract

claim, the party's request can satisfy the fourth *Eitel* factor. *See generally Landstar Ranger, Inc. v. Path Enter., Inc.*, 725 F. Supp 2d 916, 921 (C.D. Cal. 2010) (finding $243,817.34 sought by Plaintiff in breach of contract claim satisfied fourth *Eitel* factor when Plaintiff provided declaration from Plaintiff's attorney, invoice summaries, copies of invoices, and underlying shipping documents, which reflected outstanding balance).

Here, Plaintiff seeks $224,335.12. Dkt. No. 13 at 3–4. In support of this dollar amount, Plaintiff provides evidence, as well as a breakdown of the money owed from the Merchant Cash Agreement, New York judgment, attorney fees, and other costs. As to the MCA, Plaintiff provides the actual contract as an exhibit in the Complaint, which reflects a future credit-card receivables purchase price of $94,403 in exchange for an upfront payment of $67,000. Dkt. No. 1-1. The contract also outlines damages to which Plaintiff is entitled in the event that Defendant Boonkur and Jag & Nasha fails to complete his contractual obligations. *Id*. This document was signed by Strategic Funding and Ron Boonkur on behalf of Jag & Nasha (now Defendant Boon Boon). *Id*. Plaintiff also provides a certified copy of the New York court judgment, which shows the breakdown and total judgment of $64,339.61. Dkt. No. 1-2.

Additionally, Plaintiff's attorneys have submitted four sworn declarations as to attorney fees and costs. Dkt. Nos. 14 (Declaration of Kelly Sheridan ("Washington Counsel")), 15 (Declaration of Robert Malatak ("New York Counsel")), 17 (Sheridan Suppl. Decl.), 18 (Malatak Suppl. Decl.). The Washington Counsel declarations discuss the amount sought, experience of the attorneys, hourly rate, reasonableness of hourly rate, and include invoices indicating the work performed on the case. *Id*.; Dkt. No. 14-1; Dkt. No. 17. Specifically, the Washington Counsel provides examples of this District approving similar attorney fee rates. Dkt. No. 17 at 3. Further the Washington Counsel gives a thorough breakdown of the work done on this case—from consulting with the New York attorneys prior to filing in Washington, to explaining the unique

alleged fraudulent transfer, successor liability, and collection issue. Dkt. No. 17. The New York

Counsel declarations also discuss the amount sought, experience of the attorneys, hourly rate,

reasonableness of hourly rate with case law examples, and invoices of work performed on the

case. Dkt. No. 15; Dkt. No. 18. Lastly, the New York Counsel also goes into great detail

explaining the unique complexity Plaintiff's attorneys faced conducting actions such as serving

an information subpoena with restraining notice to Wells Fargo Bank (Dkt. No. 18 at 2),

litigating against Christina Boonkur's Motion to Vacate (*Id*. at 3), and retaining a handwriting

expert as part of the litigation against the Motion to Vacate (*Id*. at 4–5).

Therefore, the fourth *Eitel* factors weigh in favor of entering default judgment.

### 4.  Factor Five: Possibility of Dispute of Material Facts

It is unlikely that the material facts are in dispute. "When default has been entered, courts

find that there is no longer the possibility of a dispute concerning material facts because the court

must take the plaintiff's factual allegations as true." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp.

3d 1200, 1212 (W.D. Wash. 2014). "Where the moving party 'has supported its claims with

ample evidence, and [the defaulting party] has made no attempt to challenge the accuracy of the

allegations in the complaint, no factual disputes exist that preclude the entry of default

judgment.'" *Jung v. Liberty Mut. Fire Ins.*, No. C22-5127, 2023 WL 3204595, at *4 (W.D.

Wash. May 2, 2023) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916,

922 (C.D. Cal. 2010)). Here, Plaintiff's allegations are supported with ample evidence and have

gone unchallenged because Defendants have not appeared in this matter or otherwise participated

in this case.

Therefore, the fifth *Eitel* factor weighs in favor of entering default judgment.

//

//

### 5.    Factor Six: Whether Default is Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' default can be attributed to excusable neglect. "There is little possibility of excusable neglect when the plaintiff properly serves the defendant and the defendant is aware of the litigation." *Mesa Underwriters Specialty Ins. Co. v. Hulett*, No. C21-8284, 2022 WL 17218505, at *6 (C.D. Cal. Oct. 26, 2022). Here, Plaintiff filed affidavits (Dkt. Nos. 8, 9) confirming that Defendants Boonkur and Boon Boon were each served with a summons on May 14, 2025. The affidavit specific to Defendant Boon Boon attests that by serving Defendant Boonkur, Plaintiff served a "Registered Agent, who is authorized to receive service." Dkt. No. 8. Thus, Defendants' default is not the result of excusable neglect.

Therefore, the sixth *Eitel* factor weighs in favor of entering default judgment.

### 6.    Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiff's claims on the merits. Whenever it is reasonably possible, courts should decide cases upon their merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). But "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Federal Rule of Civil Procedure 55(a) "allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Here, Defendants have not appeared and has not participated in this case, let alone defended themselves, in any way. *See* Dkt. No. 12.

Therefore, "[s]ince [D]efendant[s] failed to respond to [P]laintiff's claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it." *Landstar Ranger*, 725 F. Supp. 2d at 922.

All *Eitel* factors weigh in favor of default judgment; therefore, the Court finds that entry of default judgment is warranted.

**C.    Damages**

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Further, Plaintiff "is required to present evidence to 'prove up' the damages that [s]he is seeking." *Olive v. Robinson*, No. C20-356, 2023 WL 346622, at *7 (W.D. Wash. Jan. 20, 2023) (first citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011), then citing Fed. R. Civ. P. 55(b), then citing LCR 55(b)(2)). "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). The Local Civil Rule provides that:

> Plaintiff shall provide a concise explanation of how all amounts were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought. If the claim is based on a contract, plaintiff shall provide the court with a copy of the contract and cite the relevant provisions.

LCR 55(b)(2)(A).

Plaintiff seeks $224,335.12 in total damages. Dkt. No. 13 at 4. This sum represents:

- $101,526.14 stemming from the New York Judgment ($64,339.61) and interest on the unpaid judgment ($37,186.53);

- $91,516.66 in fees and costs incurred by Plaintiff's New York counsel; and

- $31,292.32 in attorney fees and costs incurred by Plaintiff's Washington counsel.

*Id.* at 3–4. The Court will discuss these line items in turn.

//

//

1

2

### 1. New York Judgment and Interest

#### a. New York Judgment

Under the Full Faith and Credit Clause ("FFCC") of the United States Constitution, a judgment rendered by another state is entitled to recognition in Washington. U.S. Const. art. IV, § 1 ("Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."); *see Sessions v. UMB Bank, N.A.*, No. 2:21-cv-01490-LK, 2022 WL *3 (W.D. Wash. Mar. 4, 2022). The FFCC provides a way to end litigation that has already been decided between adverse parties in another state in the United States. *State v. Berry,* 5 P.3d 658, 662 (Wash. 2000) (citation omitted). Washington's Uniform Enforcement of Foreign Judgments Act ("UEFJA") states that creditors holding a judgment against a debtor from another jurisdiction can enforce that judgment in Washington. RCW § 6.36.025.

In the present case, Plaintiff provides evidence in the form of a certified copy of the New York court judgment (Dkt. No. 1-2), a declaration from Washington Counsel providing a true and correct summary of the foreign judgment (Dkt. No. 1-4 at 2) (Declaration re: Foreign Judgment), and the contract for the Second Agreement (Dkt. No. 1-1). Under both the FFCC (U.S. Const. art. IV, § 1) and the UEFJA (RCW § 6.36.025), the New York court judgment is recognized and enforceable here in Washington. As such, the New York judgment amounts to evidence of the claim Plaintiff brings. Furthermore, Plaintiff provides a declaration from Washington Counsel attesting to a true and correct summary of the foreign judgment, outlining the principal judgement amount, interest on judgment, and interest rate of attorney fees. Dkt. No. 1-4 at 2. Lastly, Plaintiff cites to the actual contract—the Second Agreement—as support for what the parties agreed to. For example, Plaintiff cites to portions in the Second Agreement where it discusses: Jag & Nasha doing business as Pattaya Thai (now Defendant Boon Boon) agreeing that it would not, without prior written notice, "change the card processor through

which the Receipts are settled from Processor to another card processor" (Dkt. No. 1-1 at 7);

Pattaya Thai agreeing it would not, without prior written notice, "conduct its business under any

name other than as disclosed to Processor and [Plaintiff]" (*id*.); that Boonkur agreed to be liable

for all costs and expenses, including attorney fees, attendant to the enforcement of the Second

Agreement (*id*.); and, that Boonkur agreed to pay $7,500 in "Default" and "Processor Change"

fees if Pattaya Thai made an unauthorized change of its credit-card processor (*id*.).

### b. *Interest on Unpaid Judgment*

Under 28 U.S.C. § 1961, "the award of post judgment interest on a district court

judgment is mandatory." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Air

Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288. 289–90 (9th Cir. 1995)).

Under Section 1961, "[s]uch interest shall be calculated from the date of the entry of the

judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment." 28 U.S.C. § 1961(a). However, "[i]f plaintiff is seeking

interest and claims that an interest rate other than that provided by 28 U.S.C. § 1961 applies,

plaintiff shall state the rate and the reasons for applying it." LCR 55(b)(2)(B).

In an exhibit to Plaintiff's Complaint, Plaintiff provides the interest rate it requests on the

judgment—specifically, 9%. Dkt. No. 1-4 at 2. However, nowhere in Plaintiff's Motion for

Default Judgment does it mention that interest rate, nor the reasons for applying that rate.

Instead, Plaintiff simply asserts that "the accrued interest on the New York judgment is

$37,186.53 . . . ." Dkt. No. 13 at 3. Although case law provides that interest is mandatory, *see

Barnard*, 721 F.3d at 1078, the Local Civil Rules make clear that if Plaintiff is seeking a specific

interest rate, it must provide the reasons for that rate. LCR 55(b)(2)(B). Here, Plaintiff has not

given the Court the reasons for the interest rate; thus, the Court denies the request for interest on

the judgment at an interest rate other than provided for in Section 1961.

Therefore, the Court GRANTS Plaintiff's request for the $64,339.61 New York judgment

arising from Defendants' breach of contract. The Court GRANTS IN PART and DENIES IN PART

Plaintiff's request for interest on the New York judgment. The Court DENIES Plaintiff's request

for post judgment interest of 9% but will GRANT post judgment interest as allowed by 28 U.S.C.

§ 1961(a).

### 2. New York Attorney Fees and Costs

When a plaintiff seeks attorney fees, Local Civil Rule 55(b)(2)(C) provides: "[a] plaintiff

must state the basis for an award of fees and include a declaration from plaintiff's counsel

establishing the reasonable amount of fees to be awarded, including, if applicable, counsel's

hourly rate, the number of hours worked, and the tasks performed." When

determining attorney fees, the Court uses the "lodestar" method, which involves multiplying the

number of hours reasonably expended on the claim or motion by a reasonable hourly rate. *See,*

*e.g.*, *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). Courts in the Ninth

Circuit look to the factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th

Cir. 1975), to determine the overall reasonableness of a fee request by considering:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved,
> (3) the skill requisite to perform the legal service properly, (4) the preclusion of other
> employment by the attorney due to acceptance of the case, (5) the customary fee,
> (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the
> circumstances, (8) the amount involved and the results obtained, (9) the experience,
> reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the
> nature and length of the professional relationship with the client, and (12) awards in
> similar cases.

When using the lodestar method, the Court should consider any of the relevant factors listed

in *Kerr*. *See Jordan*, 815 F.2d at 1264 n. 11 (noting that the Ninth Circuit no longer requires that

the district court address every *Kerr* factor). Further, "the district court may, if circumstances

warrant, adjust the lodestar to account for other factors which are not subsumed within it."

*Ferland*, 244 F.3d at 1149 n.4 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041,

1046 (9th Cir. 2000)). For example, the court may discount hours spent on unsuccessful claims,

overstaffing, duplicated or wasted effort, or otherwise unproductive time. *Chalmers v. City of*

*Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d

1373 (9th Cir. 1987); Bowers, 100 Wn.2d at 597, 600.

To support the request for attorney fees and costs related to the New York attorney,

Plaintiff provides a declaration signed by New York Counsel. Dkt. No. 15 (Malatak Decl.). The

declaration establishes: (1) the qualifications and experience of the various counsels and the

paralegal who worked on the case; (2) the hourly rate, hours billed, and dollar amount billed for

each attorney on the case, as well as the paralegal and librarian; (3) the reasonableness of the

hourly rates in comparison to other New York attorneys doing comparable work; and (4) detailed

records of the services provided, with the date and hours billed for those services. *Id*. This

declaration comports with the requirements of Local Civil Rule 55(b)(2)(C).

More specifically, the New York Counsel provides case law examples from his district

supporting that his, as well as his colleagues' hourly rate fees are customary for their district.

Dkt. No. 15 at 6–7. The New York Counsel provides that the hourly fees for counsel typically

ranged from $300–$400 for this matter. *See generally* Dkt. No. 15-1. Based on the case law

provided by Plaintiff, the Court agrees that Plaintiff's New York attorneys have a reasonable

hourly rate that is customary, possibly even below, in their district. *See e.g. LCS Grp. LLC v.*

*Shire LLC*, 383 F. Supp.3d 274, at *279 (S.D.N.Y. 2019) (reasonable hourly rate for partner of

$868.00 and for associate of $449.50*); MSC Mediterranean Shipping Co. v. Forsyth Kownacki*

*LLC*, 2017 U.S. Dist. LEXIS 49540, at *7-8 (S.D.N.Y. Mar. 30, 2017) ($569.02 to $753.42 per

1    hour for associates; and $874.60 to $1,048.47 per hour for partners were reasonable rates for

2    complex commercial litigators).

3         The New York Counsel also goes into detail as to why the fee is reasonable based on the

4    novelty and difficulty of the questions involved, as well as the time and labor required. The

5    supplemental declaration provides that the issues were "unusually complex compared to a typical

6    commercial collection matter." Dkt. No. 18 at 2. For example, the New York attorneys served a

7    subpoena to levy upon bank accounts of the judgment debtors. *Id*. Further, when Defendant

8    Boonkur's daughter filed a motion to vacate plaintiff's restraining notice and judgment, it

9    required significant work, such as: (1) researching legal issues related to facts and proceedings in

10   Washington (*id*. at 3); (2) filing an opposition motion (*id*. at 4); (3) engaging in extensive

11   discovery including the review of signature samples (*id*.); and (4) retaining a handwriting expert

12   to assist with review of discovery (*id*.). The New York litigation also required continuous consult

13   with Plaintiff's Washington attorneys, as well as serving subpoenas in Washington. *Id*. at 5.

14   Overall, Plaintiff's New York Counsel provides sufficient information to prove the

15   reasonableness of the fee request.

16        Therefore, the Court GRANTS Plaintiff's request for $91,516.66 in attorney fees and costs

17   incurred by Plaintiff's New York attorneys.

18   ### 3. Washington Attorney Fees and Costs

19        To support its request for Washington attorney fees and costs, Washington Counsel filed

20   a declaration. Dkt. No. 14. The declaration establishes: (1) both attorneys' qualifications and

21   experience; (2) the hourly rate, hours billed, and dollar amount billed for both attorneys on the

22   case; (3) support for why the hourly rates and hours billed are reasonable; and (4) detailed

23   records of the services provided, with the date and hours billed for those services. *Id*. The

24   declaration explains that the attorney fees and costs include professional service fees, filing fees,

messenger services, and legal research fees. *Id*. at 3. Additionally, Washington Counsel filed a supplemental declaration that provides examples from this District of similar attorney fee rates that were awarded, proving the rates Plaintiff's attorneys assert are customary in this District. Dkt. No. 17 at 3. As such, the Court agrees that the $565 hourly rate for Mr. Sheridan is reasonable, and so is the $450 hourly rate for Ms. Joy. *See e.g. Knudsen v. Hightower Holdings, LLC*, No. 24-cv-0395-KKE, 2024 WL 3430994, at *3 (W.D. Wash. July 16, 2024) (finding reasonable hourly rates of $850 for two attorneys with 32 and 20 years of experience; $755 for attorney with 16 years of experience; $685 for attorney with nine years of experience; and $625 for attorney with six years of experience); *Koonwaiyou v. Blinken*, 724 F. Supp. 3d 1222, 1236 (W.D. Wash. 2024) (finding reasonable hourly rates of $850 and $450 for attorneys with 24 and six years of experience).

Moreover, Washington Counsel provided substantial details as to the time and labor exerted on this matter, as well as why the attorney fees are customary for the novelty and difficulty of this case. Dkt. No. 17. For example, Washington Counsel "worked with Kapitus' New York counsel to domesticate and serve two deposition subpoenas necessitated by Kapitus' efforts to collect the underlying New York judgment against Mr. Boonkur's daughter and conduct discovery into the claim that Mr. Boonkur had forged her signature on the personal guarantee." *Id*. at 5. Plaintiff's attorneys needed to conduct substantial research and analyze potential legal options to prevent Defendant Boonkur from again allegedly fraudulently transferring assets. *Id*. at 5. Additionally, Defendant Boonkur's alleged fraudulent transferring of assets to avoid collection added complexity to this case. *Id*. at 6. This particular issue also required Plaintiff's Washington attorneys to continuously consult with Plaintiff's New York attorney. *Id*. at 5.

This was not a typical motion for default judgment. It involved significant consultation with the New York attorneys, additional litigation stemming from alleged signature fraud by Defendant Boonkur, and alleged fraud by the Defendants in an effort to hide assets and make recovery more difficult for Plaintiffs. Plaintiff has complied with Local Civil Rule 55(b)(2)(C) because it has provided ample evidence to support the request of $31,292.32 in Washington Counsel's attorney fees and costs.

Therefore, the Court GRANTS Plaintiff's request for $31,292.32 in attorney fees and costs incurred by Plaintiff's Washington attorneys.

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 13) is GRANTED. It is hereby ORDERED:

(1)    Judgment is ENTERED as to all claims.

(2)    Plaintiff is AWARDED $64,339.61 arising from Defendants' breach of contract.

(3)    Plaintiff SHALL provide the Court with its calculation of post-judgment interest on the New York judgement applying the interest rate provided in 28 U.S.C. § 1961(a) **within three (3) days** of this Order. Once the Court receives and checks the calculation, the Court will enter a judgment in this matter.

(4)    Plaintiff is AWARDED $91,516.66 in attorney fees and costs incurred by Plaintiff's New York counsel.

//
//
//
//
//

(5)    Plaintiff is AWARDED $31,292.32 in attorney fees and costs incurred by Plaintiff's Washington counsel.

Dated this 4th day of November, 2025.

Tana Lin

**United States District Judge**